UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WANDA J. ALLERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-423-DCP |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 14].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 17 & 18]. Wanda J. Allerton ("Plaintiff") seeks judicial review of the decision of

the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the

Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion

and **DENY** the Commissioner's motion.

## I.   PROCEDURAL HISTORY

On February 22, 2016, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on January 22, 2016. [Tr. 17, 194–209]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 134]. A hearing was held on October 11, 2017. [Tr. 38–65]. On May 15, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 17–37]. The Appeals Council denied Plaintiff's request for review on August 31, 2018 [Tr. 1–8], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on September 28, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since January 22, 2016, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: coronary artery disease status post one stent, degenerative disc disease of lumbar spine, hypertension and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift up to ten pounds occasionally and less than ten pounds frequently. The claimant can frequently bilaterally

handle objects. She could occasionally use her right lower extremity to operate foot controls. The claimant can stand and walk for up to two hours and sit for up to six hours in an eight-hour day with normal breaks. The claimant can occasionally climb ramps or stairs, and never climb ladders, or scaffolds. The claimant can frequently stoop, and occasionally balance, kneel, crouch or crawl. The claimant can perform jobs that do not require more than occasional exposure to extreme heat or cold, or excessive vibration. The claimant can perform jobs that did not require the operation of moving and hazardous machinery or work around to unprotected heights.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 15, 1970 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 20–29].

III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards.  First, Plaintiff maintains that the ALJ improperly found that her carpal tunnel syndrome and right knee conditions were not medically determinable impairments at step two of the disability determination.  [Doc. 16 at 8–9].  Next, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in not assigning a specific weight afforded to the opinions of the nonexamining state agency physicians, Celia Gulbenk, M.D. and Lucy Sauer, M.D.  [*Id.* at 10–11].  The Court will address Plaintiff's specific allegations of error in turn.

### A.    ALJ's Step Two Determination

Plaintiff claims that the ALJ improperly excluded her carpal tunnel syndrome and right knee pain from her severe impairments, and thus failed to appropriately consider these conditions. At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments.  *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20 C.F.R. §§ 404.1508; 416.908.  Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous

6

period of at least 12 months." 20 C.F.R. § 404.1509. Lastly, "[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at \*6 (S.D. Ohio Feb. 10, 2017) (internal citations omitted).

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

### 1.      Carpal Tunnel Syndrome

Plaintiff asserts that the ALJ erred by failing to find that her carpal tunnel syndrome was a severe impairment, and thus her "bilateral hand and wrist pain was not considered in the RFC rendered by the ALJ." [Doc. 16 at 8]. Plaintiff maintains that her diagnosis of carpal tunnel syndrome is well-documented in the medical record, along with the prescribed use of wrist braces and splints on each hand to be used at night and with activity. Therefore, Plaintiff alleges that this error is harmful, as she would have been precluded from all employment if the ALJ had properly included limitations on her ability to handle objects.

The Commissioner responds that the ALJ appropriately considered the medical record regarding the alleged symptoms in Plaintiff's hands and wrists, and found no evidence to support that Plaintiff's carpal tunnel syndrome was a severe enough impairment to affect Plaintiff's ability to work. [Doc. 18 at 8]. Additionally, the Commissioner maintains that additional evidence in the ALJ's decision, as well as within the medical record, supports the ALJ's determination that Plaintiff's carpal tunnel syndrome was not a severe medical impairment. Lastly, the Commissioner claims that the ALJ included limitations in the RFC determination that Plaintiff could only frequently handle objects, could only perform jobs that do not require more than occasional exposure to extreme heat or cold, or excessive vibration, and that she could not perform jobs requiring the operation of moving and hazardous machinery.

In the disability decision, the ALJ reviewed that Plaintiff "alleged pain in her hands and wrists secondary to carpal tunnel syndrome in the right hand and tendonitis in the left hand." [Tr. 21]. The ALJ noted that surgery was discussed to treat Plaintiff's pain in her hands and wrists, but was not scheduled, and Plaintiff was prescribed splints. [*Id.*]. Additionally, the ALJ reviewed that although Plaintiff complained of right arm tingling and pain on July 11, 2016 [*see* Tr. 884], she

was able to perform activities of daily living without limitation. [Tr. 21]. The ALJ noted that

Plaintiff's bilateral wrists were positive for Phalen's and Tinel's signs, although she had normal

muscle strength. [*Id.*]; *see* [Tr. 886]. The ALJ reviewed that Plaintiff was prescribed bilateral

wrist splints to be used with sleep and activity on July 11, 2016 [Tr. 21]; *see* [Tr. 886], as well as

that x-rays performed at the same time revealed "a subchondral cyst formation on her right wrist

and her left wrist was negative." [Tr. 21]; *see* [Tr. 870].

The ALJ also detailed that a November 30, 2016 electromyograph and nerve conduction

study[2] was performed which revealed mild carpal tunnel syndrome of Plaintiff's right wrist. [Tr.

21]. Next, the ALJ reviewed that "orthopedic surgeon E. Brantley Burns, M.D. diagnosed

[Plaintiff] with bilateral carpal tunnel syndrome in April 2017," but Plaintiff did not mention that

she already had braces. [*Id.*]. Lastly, the ALJ stated that Dr. Burns injected Plaintiff's left thumb

with steroids to "treat her mild OM joint osteoarthritis," and changed Plaintiff's brace to thumb

spica splints and Voltaren gel on May 16, 2017. [*Id.*]; *see* [Tr. 1156, 1158].

At issue is whether the ALJ erred by failing to find that Plaintiff's carpal tunnel syndrome

was a severe impairment, and whether any failure by the ALJ in step two was harmless due to her

subsequent RFC determination. Ultimately, the Court finds that the ALJ's step two decision that

Plaintiff's carpal tunnel syndrome was not a severe impairment is not supported by substantial

evidence, and Plaintiff satisfied her *de minimis* hurdle at this stage of the disability determination.

*See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("Under [this] prevailing *de minimis*

view, an impairment can be considered not severe only if it is a slight abnormality that minimally

---

[2] While the ALJ cited to a "November 2017 electromyograph/nerve conduction study" [Tr. 21], a review of the medical record establishes that the testing was performed on November 30, 2016. [Tr. 1175].

affects work ability regardless of age, education, and experience.").

Plaintiff "bears the burden of demonstrating that [s]he suffers from a medically determinable physical impairment[,]" as well as "the burden of showing a severe impairment by medical evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014). Here, Plaintiff points to her subjective complaints of pain in her right hand, as well as the diagnosis of bilateral carpal tunnel syndrome by her treating physician, Dr. Brantley Burns, on April 18, 2017. [Tr. 1163]. Plaintiff's left thumb was treated with steroids, as well as thumb spica splints and Voltaren gel. [Tr. 1156, 1158]. Plaintiff's physical therapist, Roelof Van der Meulen, noted right mild carpal tunnel syndrome on December 15, 2016. [Tr. 1175]. Further, Dr. Candice Stewart assessed chronic pain of both wrists on July 11, 2016, and prescribed bilateral wrist splints to be used with sleep and activity. [Tr. 886].

An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." Soc. Sec. Rul. 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Therefore, Plaintiff has cited to evidence in the medical record, including the diagnosis of carpal tunnel syndrome, to overcome her *de minimis* hurdle at step two of the disability determination.

Further, the ALJ's step two determination is not supported by substantial evidence. "In reviewing the ALJ's severity finding, the Court's job is not to decide whether it would find differently, but whether substantial evidence supports the ALJ's finding." *Guerrero v. Comm'r of Soc. Sec.*, No. 2:19-cv-1426, 2019 WL 6798918, at *6 (S.D. Ohio Dec. 13, 2019). The ALJ did not conclude that Plaintiff's symptoms from her pain in her hands and wrists secondary to carpal tunnel syndrome would have no more than a minimal effect on her ability to perform basic work activities; rather, the ALJ only broadly reviewed the medical record with respect to Plaintiff's

carpal tunnel syndrome. *Cf. Chapman v. Comm'r of Soc. Sec.*, No. 1:14-CV-00545, 2015 WL 1011520, at *9 (N.D. Ohio Mar. 5, 2015) ("Additionally, the ALJ explained her rationale for finding that Chapman's alleged carpal tunnel syndrome was not a severe impairment and Chapman has failed to demonstrate that the ALJ's finding was not supported by substantial evidence."). While the ALJ reviewed the medical record with respect to Plaintiff's hand and wrist pain, she did not make any findings or explain her reasoning that Plaintiff's carpal tunnel syndrome was not a severe impairment. Rather, the ALJ merely made the broad statement regarding several complained conditions, including carpal tunnel syndrome, "that there was no medical evidence of record to support a severe enough impairment to affect the claimant's ability to work." [Tr. 27].

[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Therefore, it is "legally irrelevant" that an impairment was determined to be nonsevere if the ALJ finds other severe impairments. *See McGlothin*, 299 F. App'x at 522 (reasoning that "because the ALJ found that [plaintiff] has some severe impairments, he proceeded to complete steps three through five of the analysis. It then became 'legally irrelevant' that her other impairments were determined to be not severe") (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). As explained by the Sixth Circuit:

> An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. This rule is predicated on the notion that the ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity."

*Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of*

*Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)) (internal citations removed).

However, in the present case, the ALJ failed to consider Plaintiff's carpal tunnel syndrome, which she deemed to be a non-severe impairment, in the disability determination at step four. *See, e.g.*, *Winn*, 615 F. App'x at 326 ("[T]he ALJ's step-four determination regarding Winn's RFC did not consider Winn's mental impairments in a meaningful way."). The ALJ's only analysis of the relevant medical evidence discussed above is during step two of the disability determination. While the ALJ stated that she considered all of Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," [Tr. 23], the ALJ did not discuss the symptoms of Plaintiff's diagnosis of carpal tunnel syndrome—such as the effect of the prescribed braces to be worn with activity. Further, while the ALJ stated that Plaintiff was still able to perform activities of daily living without limitation at step two of the disability decision, the ALJ did not review Plaintiff's daily activities in the RFC determination under the scope of her carpal tunnel symptoms. *See, e.g.*, *Katona v. Comm'r of Soc. Sec.*, No. 14–CV–10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) ("And to the extent an ALJ determines that an identified impairment, severe or *non-severe*, does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'") (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12–13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)) (other citations omitted).

The Commissioner argues that the ALJ included limitations that Plaintiff could only frequently handle objects, could only perform jobs that do not require more than occasional exposure to head or cold, or excessive vibration, and could not perform jobs requiring the operation of moving and hazardous machinery; which therefore accounted for Plaintiff's carpal tunnel syndrome. However, the ALJ did not meaningfully consider Plaintiff's functional limitations due

to her hand and wrist pain, as well as carpal tunnel syndrome, in the RFC determination, and the Court has already detailed that the ALJ's step two findings were not supported by substantial evidence. *See* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *see, e.g.*, *Six v. Comm'r of Soc. Sec.*, No. 2:18-CV-01639, 2020 WL 746595, at *7 (S.D. Ohio Feb. 14, 2020) ("Failure to state the basis for including no limitations arising from non-severe impairments is error.").

Lastly, the VE in the present case testified that a limitation to occasional, instead of frequent, bilateral handling, along with the other limitations in Plaintiff's RFC, "would eliminate competitive work." [Tr. 62]. Therefore, although the ALJ found that Plaintiff was capable of frequent handling, the ALJ improperly failed to consider Plaintiff's carpal tunnel in the RFC determination, as the VE testified that a restriction to occasional bilateral handling of objects would be work preclusive. *See, e.g.*, *McQuown v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-32, 2019 WL 2476803, at *7 (S.D. Ohio June 13, 2019) ("In light of the vocational expert's testimony that a restriction to 'occasional bilateral handling and fingering with one arm' is work preclusive, limitations resulting from Plaintiff's carpal tunnel are particularly relevant to his ability to perform a job. Yet the ALJ failed to address any limitations or restrictions caused by carpal tunnel."). Here, the ALJ found Plaintiff capable of frequent bilateral handling, but she improperly did not state the basis for this finding, particularly in light of her previous discussion of Plaintiff's prescribed braces with activity.

Ultimately, as the ALJ did not expressly consider Plaintiff's carpal tunnel syndrome and related symptoms when assessing Plaintiff's ability to work in the RFC determination, the ALJ's failure to classify Plaintiff's carpal tunnel syndrome as a severe impairment is reversible error. As

such, Plaintiff's assignment of error constitutes a basis for remand.

### 2. Right Knee Condition

Plaintiff also submits that the ALJ improperly found that her right knee condition was not a severe impairment, and thus erred in failing to consider this condition in the RFC determination. *See* [Doc. 16 at 9]. Plaintiff cites to additional treatment records from William Oros, M.D., involving reported patella femoral grinding during an examination, as well as the possibility of a knee replacement as a treatment option. [*Id.*]. The Commissioner responds that the ALJ properly considered Plaintiff's alleged bone on bone pain in her right knee, found it did not constitute a severe medical impairment, reviewed Plaintiff's daily activities in the RFC determination, and then limited Plaintiff to a range of sedentary work. [Doc. 18 at 10].

In the disability decision, the ALJ found at step two that Plaintiff's osteoarthritis of the right knee was not a severe impairment, as "there was no medical evidence of record to support a severe enough impairment to affect the claimant's ability to work." [Tr. 20]. The ALJ also reviewed the medical record with respect to Plaintiff's right knee and found that although Plaintiff's alleged bone on bone pain of her right knee was diagnosed by Dr. Lovell at Tennessee Orthopedic Clinic, these allegations were inconsistent with Dr. Oros' August 2017 treatment records. [Tr. 21]. The ALJ noted that Plaintiff admitted that she was able to walk for a significant period, Plaintiff had active pain free range of motion on examination, and Dr. Oros treated her osteoarthritis of the right knee with an injection. [*Id.*]. Further, the ALJ reviewed that there was no evidence that Plaintiff appeared for a follow-up appointment or later surgery. [*Id.*].

The Court has already found that Plaintiff's case will be remanded for the ALJ to review the finding of whether her carpal tunnel is a severe impairment, and then expressly consider Plaintiff's carpal tunnel, and the effects of its symptoms, in the RFC determination. Therefore, on

remand, the ALJ should also consider whether Plaintiff's right knee conditions constitute a severe impairment, and then evaluate the combined effect of this impairment on Plaintiff's ability to work in the RFC determination.

## B. ALJ's Review of Opinions of Nonexamining State Agency Physicians

Plaintiff asserts that the ALJ erred in not assigning a specific weight to the medical opinions of nonexamining state agency physicians, Celia Gulbenk, M.D., and Lucy Sauer, M.D. Plaintiff states that "[t]he ALJ's failure to articulate the weight she afforded to the medical opinions of Drs. Sulbenk and Sauer is significant due to the fact that much of the RFC rendered by the ALJ is a reflection of those opinions," as well as that the ALJ discounted the medical opinions of Plaintiff's treating sources. [Doc. 16 at 10–11]. The Commissioner responds that the ALJ evaluated the medical opinions and stated that the opinions of the nonexamining state agency physicians were consistent with the objective evidence, but found that Plaintiff was more limited in the RFC determination. [Doc. 18 at 11–12].

In the disability decision, the ALJ stated that she considered the opinions of the nonexamining state agency physicians, and "that overall they are consistent with the objective evidence and the determination of the residual functional capacity." [Tr. 27]. The ALJ noted, however, that at the hearing level, she found Plaintiff had more limitations with respect to manipulation and exposure to excessive vibrations than did Dr. Gulbenk, who reviewed the evidence of record at the initial level of the agency's review, and Dr. Sauer, who affirmed the opinion at the reconsideration level. [*Id.*].

In considering non-treating state agency physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological

consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). While an ALJ is required to consider every medical opinion of record, 20 C.F.R. § 404.1527, Drs. Gulbenk and Sauer are not treating physicians, and thus the ALJ is not required to defer to their opinions. *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994).

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). However, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore

these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996).

The Court notes that the ALJ's failure to assign a specific weight to the opinion of a non-treating physician has been found to be harmless error when the ALJ's RFC determination is more restrictive than the medical opinion or where the ALJ reviews the opinion throughout the RFC determination. *See, e.g.*, *Marritt v. Comm'r of Soc. Sec.*, No. 3:18-CV-119, 2019 WL 95553, at *6 (N.D. Ohio Jan. 3, 2019) ("The fact that the ALJ did not assign a specific weight to Dr. Onamusi's opinion is of little significance here. The ALJ's RFC determination was more restrictive than Dr. Onamusi's opinion. Marritt does not explain how he was prejudiced by the ALJ's failure to state the specific weight assigned to Dr. Onamusi's opinion."); *Bays v. Colvin*, No. 2:15-CV-170, 2016 WL 4384741, at *2 (E.D. Tenn. Aug. 17, 2016) (holding "the error in failing to explicitly state the weight given to [a consultative examiner's opinion] was harmless[, as] [t]he ALJ discusses the substance of [the consultative examiner's] opinion in multiple sections of his opinion and noted the deficiencies he found in [the] opinion"); *Rearden v. Colvin*, No. 4:15-CV-070-HBB, 2016 WL 1629377, at *8 (W.D. Ky. Apr. 22, 2016) ("Though the ALJ here did not assign specific weight to the state agency psychologists, it can be inferred from the decision that the ALJ rejected their findings.").

Therefore, as the ALJ's RFC determination was more restrictive than that opined by the nonexamining state agency physicians, the Court finds that Plaintiff has failed to demonstrate prejudice resulting from the ALJ's failure to assign a specific weight to Dr. Gulbenk and Dr. Sauer's opinions. However, on remand, the ALJ should review all medical opinions of record and explain the weight given to each opinion in the RFC determination.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**.  This case will be **REMANDED** to the SSA for the ALJ to appropriately consider the finding of whether Plaintiff's carpal tunnel is a severe impairment, and then expressly examine Plaintiff's carpal tunnel, and the effects of its symptoms, in the RFC determination.

ORDER ACCORDINGLY.


Debra C. Poplin
United States Magistrate Judge